Price, J.
There are two questions presented in the record for our determination, which are:
1. The Atlas National Bank, having in its possession certain warehouse receipts for a stock of whiskey given it by H. F. Stothfang in pledge as collateral for a loan of money made to him by the bank, could the pledgor make another valid pledge or a transfer to Dieckmann of an interest in the same receipts, without any change of possession, as collateral security for a débt due him from the pledgor?
2. If the pledgor filed a deed of general assignment for the benefit of creditors within ninety days after the making of the second pledge or transfer, is such pledge or transfer void’ under the provisions of section 6343, Revised Statutes?
1. The facts agreed upon show that H. F. Stothfang, for several years prior to the transaction involved, had been indebted to one Dibowski in the sum of one thousand dollars and accruing interest, and that on the last note for this debt, Dieckmann had become liable as surety or endorser, and when it matured Stothfang neglected payment. To avoid threatened suit Dieckmann satisfied the note of Dibowski by giving his individual note secured by a mortgage on his real estate. At the same time Dieckmann took the note of H. F. Stothfang, which contains a provision, that after the debt which he owed the Atlas National Bank was paid out of certain warehouse receipts for whiskey, which it held in pledge as security for the debt, the balance of said receipts were to be held by said Dieckmann as collateral security to his note, and *268 in this provision, power of public or private sale was conferred upon him. This instrument was executed and delivered on the 12th day of May, 1899, and on the 15th day of May, a copy of the above note and provision was served on the bank, with a notice that it should keep possession of the warehouse receipts pledged with it as collateral security for its claim against the pledgor (Stothfang), and that after it was fully paid, the balance of the warehouse receipts were to be turned over to Henry Dieckmann, who is one of the defendants in error. This notice and copy of the note given him were received, accepted and acted upon by the bank, and it was holding those receipts when Stothfang assigned on the 7th of August, 1899. It seems no question was raised by the assignee or any creditor as to the right or lien of the Atlas National Bank, but it is insisted that the attempted transfer or pledge to Dieckmann is invalid, because he never was in possession of the receipts, or the whiskey represented by them.
On this branch of the case ■ it may be remarked, that delivery of the property pledged is generally essential to a valid pledge, and it is equally true that to make a valid sale or transfer of any species or article of personal property, a delivery of the property sold or transferred is necessary, and to this extent the authorities cited by counsel for plaintiff in error may be approved. But it does not follow that actual or physical delivery should always accompany the sale or transfer, and this is also true as to the pledging of choses in action or other kinds of personal property. The delivery in some cases may be symbolical, such as the handing over the writing which constitutes the title to the property, just as was done in this case, to secure the Atlas Na *269 tional Bank for the money it had loaned to Stothfang. He delivered to the bank, not the one hundred and sixty-five barrels of whiskey, but the warehouse receipts for the same, which were its muniment of title and control of the property they represented. And when the pledgor desired to secure the payment of the note held against him by Dieckman, he executed and delivered to him the transfer of all interest in the receipts which would remain, after the bank’s claim should be satisfied. This transfer was not strictly a pledge, but an assignment and transfer of the stated interest in the warehouse receipts; but if it is desired that we call it a pledge, as has been done by counsel, we still observe, that constructive possession in the second pledgee would be sufficient, if the intent to deliver such possession is clearly apparent. It is the application of the familiar rule, that the transfer is complete and delivery made, when the owner has done all that he can do in the premises, and has given such possession to the pledgee or transferee as the nature of the property and its situation will permit. In this case Stothfang owned a valuable equity' in the warehouse receipts held by the bank, as their sale afterwards made manifest, and it was such interest in them that could be made the subject of sale and transfer, and even pledge, and certainly Stothfang gave to Dieckmann possession of all interest in and' title to the receipts which would remain after the debt due the bank was satisfied. This was all the delivery that could then be made, and it was at least a constructive delivery, and this we think meets the demands of the law. In section 297 of Story on Bailments, the author, on the subject of pledges, says:' “It is of the essence of the contract, that there should be an actual delivery of the thing to the pledgee. Until *270 the delivery of the thing; the whole rests in an executory contract, however strong may be the engagement to deliver it, and the pledgee acquires no property in the thing. What will amount to a delivery of the thing is, in many cases, a matter of law. There need not be an actual manual delivery of the thing. It is sufficient if there are any of those acts or circumstances, which, in construction of laio, are deemed sufficient to pass the possession of the property. Thus, goods at sea may be passed in pledge by a transfer of the muniments of title; as by a transfer of the bill of lading, or by a written assignment thereof. So goods in a loarehouse may be transferred by a symbolical delivery of the keys thereof * *
In the case of Wilson v. Little, 2 Comst., 443, the court of appeals of New York held: “Possession of the property is essential to the existence of a pledge, but the possession may be according to the nature of the subject. Where the property is not capable of manual delivery and possession (shares of stock in an incorporated company), a pledge may be created by a written transfer thereof * *
And on page 447, that court says: “There seems to be no reason why any legal or equitable interest whatever in personal property may not be pledged, pro-Added the interest can be put, by actual delivery or written transfer, into the hands or within the power of the pledgee, so as to be made available to him for the satisfaction of the debt. Goods at sea may be passed in pledge by a transfer of the muniments of title, as by written assignment of the bill of lading. This is equivalent to actual possession, because it is a, delivery of the means of obtaining possession.”
The ease of Tuxworth v. Moore, 9 Pick., 347, is also in point. See also Whitaker v. Sumner, 20 Pick., *271 399. These are but a few of the* many decided cases to the same effect. Another view of the facts in this case may be justified. When the bank received the notice appearing in the record, it acted upon it, and in so doing became the agent of Dieckmann for the purposes specified, and its possession might be regarded as the possession of Dieckmann, and thus satisfy the legal requirement as to delivery.
2. Was the pledge or transfer void because of the provisions of section 6343, Revised Statutes, as amended in 1898? As a construction of that section is involved, it is well that it appear in this opinion. It reads:
“Every sale, conveyance, transfer, mortgage or assignment, whether made in trust or otherwise, by a debtor or debtors, and every judgment suffered by him or them, and act or device done or resorted to by him or them in contemplation of insolvency, or with a design to prefer one or more creditors to the exclusion in whole or in part of others, and every sale, conveyance, transfer, mortgage or assignment made or judgment suffered by a debtor or debtors, or procured by him or them to be made, in any mannerj with intent to hinder, delay or defraud creditors, shall be declared void as to creditors of such debtor or debtors, at the suit of any creditor or creditors, as hereinafter provided, and shall operate as an assignment and transfer of all the property and effects of such debtor or debtors, and shall inure to the equal benefit of all creditors of such debtor or debtors in proportion to the amount of their respective demands, including those which are unmatured.
“And every such sale, conveyance, transfer, mortgage or assignment made, and every such judgment suffered, and every such act or device done or re *272 sorted to, by any debtor or debtors, in tbe event of a deed of assignment being filed within ninety (90) days after the giving or doing of such thing- or- act, shall be conclusively deemed and held to be fraudulent and shall be held to be void as to the assignee of such debtor or debtors, where upon proof shown, such debtor or debtors was or were actually insolvent at the time of the giving or doing of such act or thing, Whether he or they had knowledge of such insolvency or not.
“Provided, that nothing in this section contained shall-vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be filed for record in the county wherein the property is situated, or as otherwise provided by law, within three (3) days after its execution, and where upon foreclosure or taking possession of such property the mortgagee fully accounts for the proceeds of such property.”
The pledge or transfer to Dieckmann was made on the 12th day of May, 1899, by H. F. Stothfang, and he filed a deed of assignment on the 7th of August oí the same year which was within ninety days after the making of the pledge or transfer. Notwithstanding this fact, and the language of section 6343, Revised Statutes, the transactions of the 12th of May are not necessarily void. There still may be valid sales, conveyances and transfers of property made, and which will not be affected although the seller or transferrer may file a deed of assignment within ninety- days thereafter. The clause of this section, and which is an important part of the amendment of the original section, provides that, “every such sale, conveyance, transfer * * * made by any debtor, or debtors, in the event of a deed of assignment being filed within *273 ninety days after the giving or doing of such thing or. act, shall be conclusively deemed and held to be fraudulent, and shall be held to be void as to the assignee of such debtor or debtors, where upon proof shown, such debtor or debtors was or were actually insolvent at the time of the giving or doing of such act or thing, whether he or they (the debtor or debtors) had knowledge of such'insolvency or not.”
It will be seen that the word “such” among the first words of the addition to the. original section, fills an important and determinative office in the construction of what follows it. It relates back to the preceding paragraph of the section wherein is provided what sales, transfers * * * shall be declared void as to creditors of such debtor or debtors, at the suit of any creditor or creditors; and the sales and transfers * * * which may be so declared void at the suit of the creditors, are such as were made in contemplation of insolvency, or with a design to prefer one or more creditors to the exclusion in whole or in part of others; and every sale, conveyance, transfer * * * with intent to hinder, delay or- defraud creditors. “Such” sales, conveyances, transfers, etc., as are thus enumerated, shall be declared void at the suit of a creditor. And it is “such” sales, conveyances, transfers, etc., as above enumerated that shall be conclusively deemed fraudulent and void as to the assignee, if the assignment is made within ninety days after such sale, conveyance, transfer, etc. In order to warrant any other construction, we must eliminate and wholly disregard the word “such,” which seems to have been purposely used by the legislature and not through accident or mistake. That word brings the class of acts and things done as set out in the original, and which *274 is yet the principal provision on the subject, down to the new declaration made by the amendment concerning them, and says: “every such sale, conveyance, transfer * * * in the event of a deed of assignment being filed within ninety days * * * shall be conclusively deemed and held to be fraudulent,” etc.
We have no right or authority to despise or disregard this significant word, but must construe the section with it performing its legitimate function; and if such construction tends to render the amendment of 1898, somewhat unproductive of intended or desired results, it is not the fault of the court, as it is not the law-making power.
Therefore, if the sale or conveyance or transfer was not in contemplation of insolvency; if it was not made Avith intent to hinder, delay or defraud creditors, or with a design to prefer one or more creditors to the exclusion in whole or in part of others, the transaction will stand in a suit brought by a creditor; and such sale, conveyance or transfer will also stand, although made within ninety days next preceding the filing of a deed of assignment, by the maker of the sale, conveyance or transfer. This conclusion rests upon the ground that the transactions were in good faith, and without the dishonest or fraudulent motive and intent which are the basis of an action to avoid them. The legislature in this part of the law regulating the acts of insolvent debtors and providing a mode of administering their estates, did not intend by the amendment to the section under consideration, to enact a system of bankruptcy, but rather attempted to provide a rule of proof in such cases, as is shown by the entire amendment, because the sales, conveyances and transfers that are “conclusively deemed and held to *275 be fraudulent,” where an assignment follows within ninety days thereafter, are only such sales, conveyances and transfers, etc:, as are condemned in the main provision of the section, but proof must appear to show that “the debtor or debtors was or were actually insolvent at the time of the act done,” whether he or they (the debtor or debtors) had knowledge of such insolvency or not.
It seems clear, therefore, that the transfer or pledge by Stothfang to Dieckmann is not void because it was made within ninety days preceding Stothfang’s assignment, but that proof was necessary to show that such transfer was made in contemplation of insolvency; or with a design to prefer one or more creditors to the exclusion in whole or in part of others; or with intent to hinder, delay or defraud creditors, inasmuch as it is such sales, conveyances, transfers, * * * that fall within the ninety day clause.
The record in this case shows none of the foregoing facts requisite to avoid the pledge or transfer. It is true Stothfang was insolvent when he made the pledge to Dieckmann, but of this, the latter had no knowledge. There is no finding or fact in the record which brings the case within the section as we construe it, and as no fraud, or intent to prefer, hinder or delay, is shown, we will not presume either.
On both questions we approve of the judgment of the circuit court and it is affirmed.

Affirmed.

Williams, C. J., Btjrket, Spear, Davis and Shauck, JJ., concur.